United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYLE JEAN RUTLEDGE,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL,<br><br>  Defendant. | Case No. 18-cv-06601-JSC<br><br>**CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 22 |

Plaintiff Darryle Jean Rutledge seeks social security benefits for a variety of physical and mental impairments, including impairments stemming from a stroke in 2005 and a heart attack in 2006. (Administrative Record ("AR") 119.) Pursuant to 42 U.S.C § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 21 & 22.) Because the decision of the Administrative Law Judge ("ALJ") to deny benefits is supported by substantial evidence and otherwise free of legal error, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education,

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C § 636(c). (Dkt. Nos. 8 & 11.)

and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual function capacity," ("RFC") the claimant can still do her "past relevant work"' and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012); *see also* 20 C.R.F. §§404.1520(a), 416.920(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ does not apply proper legal standards." *Id.*

**BACKGROUND**

**I.   Procedural Background**

On July 8, 2014, Plaintiff filed an application for social security disability benefits, alleging disability beginning April 1, 2014. (AR 23.) The Commissioner first denied the application in November 2014, (AR 149), and again denied the application upon reconsideration in April 2015, (AR 155). Plaintiff then filed a request for a hearing before an ALJ. (AR 160.) In February 2017, Plaintiff appeared and testified before ALJ John J. Flanagan. (AR 42.) Dr. Steven S. Goldstein and Dr. Richard Cohen, qualified medical experts, and Robert Cottle, a vocational

expert, also testified at the hearing. (AR 42.) The ALJ held a supplemental hearing in July 2017 to allow Dr. Goldstein to testify with the benefit of the full medical record. (AR 91.) Plaintiff, Dr. Goldstein, and vocational expert Lawrence Haney testified at the second hearing. (AR 91.)

In August 2017, the ALJ issued an unfavorable decision. (AR 23-32.) The following month, Plaintiff filed a request for review of the ALJ's decision. (AR 305-07.) In August 2018, the Appeals Council determined that it would not review the ALJ's findings, making the ALJ's decision final. (AR 1-7.)

## II. Administrative Record

Plaintiff was born on February 27, 1954 and resides in Fremont, California. (AR 119.) She asserts that she has been unable to work since April 1, 2014 because of the following physical and mental impairments: "Hemiparesis progression and numbness (Rt); Coronary Artery Disease with peripheral edema; Shortness of breath due to past heart attack; Chronic obstructive Sleep Apnea (CPAP used); Siatic [sic] Nerve Damage; Residual from stroke dysphasia and dysphagia progression; depression; Residual from stroke memory loss progression; chronic pain (Rt side of body) and pins tick sensation; Impaired Vision from stroke." (*See* AR 44, 119.)

### A. Medical Evaluations and Physician Statements

#### 1. Psychological Examination by Dr. Carol Fetterman

Dr. Carol Fetterman is a consultative examining psychologist who met with Plaintiff on September 11, 2014. (AR 673.) Plaintiff reported that she suffers from confusion, depression, and memory loss as a result of her 2005 stroke. (*Id.*) Dr. Fetterman noted "mild memory impairment" upon testing, and determined that Plaintiff's ability to "understand, remember, and carry out job instructions" would be mildly impaired. (AR 675-76.) Dr. Fetterman found that Plaintiff's "ability to maintain attention, concentration, persistence and pace" was also mildly impaired. (AR 676.) Plaintiff's ability to relate and interact with co-workers and ability to "adapt to day-to-day work activities" were similarly impaired. (*Id.*) Dr. Fetterman diagnosed Plaintiff with a "Mood Disorder [not otherwise specified] due to General Medical Condition." (*Id.*) Dr. Fetterman opined that Plaintiff's "mental health symptoms" appeared "chronic in nature," and that

Plaintiff would "benefit from starting psychotherapy and medication treatment." (*Id.*) Dr. Fetterman characterized Plaintiff's prognosis as "fair." (*Id.*)

### 2. Physical Examination by Neurologist Dr. Farah Rana

Dr. Farah Rana is a consultative examining physician who met with Plaintiff on October 21, 2014. (AR 679.) Dr. Rana's report notes Plaintiff's chief complaints were "stroke, coronary artery disease, lower back pain, and mild asthma." (*Id.*) Dr. Rana's report includes the following diagnoses: (1) history of stroke, noting right-sided hyperreflexia on examination but "[n]o focal motor or sensory deficit"; (2) history of hypertension and history of coronary artery disease, status post myocardial infarction in 2006 and post angioplasty in October 2014; (3) "[c]hronic lower back pain most probably secondary to mild degenerative disc/degenerative joint disease"; and (4) history of mild asthma. (AR 681.)

Dr. Rana's "functional capacity assessment" opined that Plaintiff can stand, sit, and walk six hours out of an eight-hour work day, with breaks. (*Id.*) Further, Plaintiff can carry "10 pounds frequently and 20 pounds occasionally." (*Id.*) She is also able to "handle, manipulate, feel, and finger objects without any problem," and can occasionally "stoop, bend, kneel, crouch, . . . because of her lower back pain." (*Id.*) Dr. Rana opined that Plaintiff does not need an assistive device to ambulate, and "can take public transportation." (*Id.*) Dr. Rana also noted that Plaintiff "can manage her day-to-day chores." (AR 680.)

### 3. Non-Examining State Agency Physicians

In November 2014, non-examining state agency physicians reviewed Plaintiff's medical records and determined that while Plaintiff's impairments cause some limitations on her ability to perform work activities, those limitations do not prevent her from performing her past relevant work. (AR 131.) Thus, the state agency physicians concluded that Plaintiff's "condition is not severe enough to keep [Plaintiff] from working." (*Id.*) Two different state agency physicians made the same determination upon reconsideration of Plaintiff's application in March 2015. (*See* AR 147.)

//

//

### 4. Statement from Primary Care Physician Edsell Bernardo

Dr. Edsell Bernardo is Plaintiff's treating physician. (AR 1245.) In a January 2015 "Medical Source Statement," Dr. Bernardo reported that he had treated Plaintiff for one year and saw Plaintiff "every 3-4 months."[2] (AR 1188.) Dr. Bernardo indicated that Plaintiff's reported symptoms include pain, fatigue, confusion, depression, edema, and being "unbalanced." (*Id.*) Dr. Bernardo further found that Plaintiff experiences numbness, decreased functionality, and "relative[ly] mild weakness in the right side." (*Id.*) Dr. Bernardo indicated that most of Plaintiff's symptoms started in 2010, and that her right-side weakness has grown more pronounced since June 2014. (AR 1192.) Dr. Bernardo further noted that Plaintiff suffered a second heart attack in October 2014. (*Id.*)

Dr. Bernardo reported that Plaintiff requires an assistive device for "standing/walking" due to imbalance, pain, weakness, insecurity, and dizziness. (AR 1191.) Dr. Bernardo indicated that Plaintiff could sit or stand/walk for less than two hours total in an eight-hour work day, and that she would need unscheduled breaks during a work day due to muscle weakness, chronic fatigue, pain, paresthesias, numbness, and adverse effects of medication. (AR 1190.) Further, Plaintiff can occasionally lift less than 10 pounds and rarely lift 10 pounds. (AR 1191.) Dr. Bernardo also reported that Plaintiff has "significant limitations with reaching, handling or fingering." (*Id.*) Dr. Bernardo opined that Plaintiff's symptoms would likely interfere with her "attention and concentration needed to perform even simple work tasks" for at least 25% of a typical work day. (AR 1192.) Dr. Bernardo further opined that Plaintiff would likely miss more than four days of work per month due to her "impairments or treatment." (*Id.*)

Dr. Bernardo issued a letter in September 2015 stating that Plaintiff has limitations associated with arthritis as well as moderate degenerative disc disease. (AR 1244.) Dr. Bernardo opines that Plaintiff has a limited range of motion and reduced strength which he believes is likely due to her previous stroke. (*Id.*) As a result, "she experiences pain that radiates down the back of

---

[2] Dr. Bernardo's representation regarding the length of the treatment relationship conflicts with a subsequent letter he issued in September 2015, which states that he has been Plaintiff's "treating physician since June 2014." (*See* AR 1245.)

her leg into her foot, causing numbness in that foot." (*Id.*) Dr. Bernardo states that Plaintiff was "let go [from her previous employment] in March 2014," and that she "is not a candidate for full time work" because she has "increasing difficulty performing work tasks due to pain, weakness, and lack of stamina, making it hard for her to keep up with work pace." (AR 1246.) Dr. Bernardo opined that if Plaintiff were to attempt to work full-time, Plaintiff would likely "miss work more than four days per month due to her condition." (*Id.*)

### 5. Medical Interrogatory by Dr. Steven Goldstein

In a "Medical Interrogatory" dated March 13, 2017, neurologist Steven Goldstein[3] reported that the medical evidence reflects that Plaintiff suffered a stroke and heart attack, has hearing loss, is obese, and has degenerative disc disease of the lumbar spine. (AR 1421.) Dr. Goldstein opined that none of Plaintiff's impairments meet or equal those described in the "Listing of Impairments" that would qualify her as disabled. (AR 1422.) As for Plaintiff's functional limitations, Dr. Goldstein concluded that Plaintiff can lift up to 10 pounds frequently and 20 pounds occasionally, can sit, stand, and walk for six total hours in an eight-hour work day, and that Plaintiff has frequent use of her both her feet and hands. (AR 1424, 1426-27.) Dr. Goldstein also indicated that Plaintiff can frequently climb stairs, and occasionally balance, stoop, kneel, crouch, and crawl. (AR 1428.) Further, Dr. Goldstein noted that Plaintiff: can care for herself and perform tasks such as shopping and preparing meals; can use public transportation; does not require a companion to travel or assistive device to ambulate; and can "sort, handle, [and] use paper/files." (AR 1430.)

### B. February 2017 ALJ Hearing

#### 1. Dr. Richard Cohen's Testimony

Dr. Richard Cohen is a board-certified psychiatrist whose specialties include individual psychotherapy. (AR 1404.) He testified at the February 23, 2017 hearing as a "Psychological Expert." (AR 45.) Dr. Cohen asked Plaintiff whether she had received treatment from a mental

---

[3] Dr. Goldstein is identified in the ALJ's August 2017 decision as an "impartial medical expert," and identified by the ALJ as an "orthopedi[c] neurologist" in the transcript for the February 2017 hearing. (*See* AR 23, 42; *see also* AR 1440 (Dr. Goldstein's curriculum vitae).)

health professional since 2014, and Plaintiff responded: "No, I haven't." (AR 46.) Dr. Cohen testified that Plaintiff had received "no real mental health treatment" and he characterized Plaintiff's mental condition as a "mood disorder secondary to a stroke." (*Id.*) Dr. Cohen further testified that Plaintiff's "problems are mainly physical," and that "she may not even have mood disorder if she got some treatment." (AR 47.) Dr. Cohen opined that Plaintiff's mood disorder was "potentially reversible with . . . about six months of treatment." (*Id.*)

### 2. Dr. Steven Goldstein's Testimony

The ALJ next questioned Dr. Steven Goldstein, a neurologist. (AR 48; *see also* AR 1440.) Dr. Goldstein indicated that there was a history of smoking in Plaintiff's medical record; that she had restrictive lung disease; that there was a record of coronary artery disease, and that she had stents placed in 2014. (*Id.*) Dr. Goldstein testified that there were "multiple diagnoses in the record" but the only "severe" impairments were "coronary artery disease and the chronic restrictive pulmonary disease." (AR 50.) He stated that neither of the severe impairments meet or equal any of the Commissioner's listings. (*Id.*) Dr. Goldstein further testified that Plaintiff was capable of a "light level of physical activity" including the ability to "sit and stand and walk for six hours of the eight-hour day" and the ability to "carry 10 pounds frequently, and 20 pounds on an occasional basis." (AR 51.) After answering questions about Plaintiff's physical capabilities, Dr. Goldstein indicated that he had not reviewed the full record and was missing some exhibits; thus, Dr. Goldstein could not make a full finding on the evidence as he had not seen all the documents. (AR 51-54.) The parties determined that Dr. Goldstein would "complete an interrogatory" after reviewing the full record "to see if it change[d]" his testimony. (AR 54.) As previously discussed, Dr. Goldstein completed his "Medical Interrogatory" roughly a month later. (*See* AR 1421.)

### 3. Plaintiff's Testimony

Plaintiff testified that she completed four years of college to earn two associate degrees: one in electronics technology and another in health information management. (AR 57-58.) She reported past work as an abstractor coder at an employment agency for "about two years" ending

in 2014. (AR 60.) Before that, Plaintiff worked as a medical record coder from 2008 to 2010. (AR 60-61.) Both jobs were sedentary, full-time, and Plaintiff used a keyboard. (AR 61.)

Plaintiff testified that since 2015 she has worked part-time as "an aide to a disabled counselor" at the Department of Rehabilitation. (AR 44, 59.) Plaintiff testified that she works 15 to 20 hours per week doing "data entry, copying, filing" and other clerical work, earning $12.50 an hour. (AR 58-59.) The ALJ asked Plaintiff whether she could work more hours if she wanted to, and Plaintiff responded: "Well [my employer] knows that I have a disability[,] so they don't put more hours on me." (*Id.*)

Plaintiff reported that she spends half her work day sitting and the other half standing and walking and that she can lift only one pound at a time. (*Id.*) Plaintiff testified that her ability to grasp is limited and that she only uses a keyboard for five minutes at a time, and that she becomes fatigued after "[a]bout four hours" of work. (AR 60, 69.) Plaintiff further testified that she could continue her part-time employment "for the next 10 years if [she] had to." (AR 67.)

Plaintiff reported that her employer permits several work-related accommodations due to her conditions, including: elevating her feet to alleviate ankle swelling; periodic stretching when needed; and leaving work early if Plaintiff is too tired. (AR 68-69.) Plaintiff indicated that productivity "doesn't matter" at her current job, that she is allowed to work at her own pace, and that she takes "about three or four breaks" during a four-hour work shift. (AR 70.) Plaintiff further testified that "it's been harder to focus" since her stroke in 2005, and that she would be unable to work full-time because she "get[s] tired quicker and more fatigued as the day goes on." (AR 71-72; *see also* AR 75 ("If I have to work eight hours for one of the days, I get fatigued.").)

Plaintiff testified that in 2014 she began getting dizzy and losing her balance, and that although she had been doing highly-skilled coding work for years since her 2005 stroke, her condition worsened. (AR 76.) Plaintiff reported that her doctors told her that she "could be having mini strokes" because the "weakness in [her] right side started getting worse." (*Id.*) Plaintiff further testified that at the end of the day she feels "so tired and drained and [her] legs are so swollen most of the time [she] just [has] to lay down; either lay down or put" her legs up until the swelling goes down. (AR 77.)

8

The ALJ asked Plaintiff whether there was anything in the treatment record to support Plaintiff's testimony regarding her edema/leg swelling. (*Id.*) Plaintiff's then-counsel could not identify such support in the record, and the ALJ allowed the record to remain open so that Plaintiff could submit a "post hearing brief or letter" identifying treatment records supporting Plaintiff's testimony regarding leg swelling, edema, or a need to elevate her legs. (AR 78.)

#### 4. Vocational Expert's Testimony

Vocational Expert Robert Cottle classified Plaintiff's recent relevant work history as follows: medical record coder as "sedentary"; abstractor coder as "sedentary"; and current part-time work as a general clerk as "light." (AR 81.) The ALJ posited the following hypothetical to Mr. Cottle:

> If I asked you to consider that we have an individual who is 62 years of age; they have actually four years of college; and they have past relevant work as described. For the first hypothetical, I'm finding that there are no mental restrictions. And from an exertional standpoint, if the individual is restricted to light exertional activity as defined in the regulations [at 20 C.F.R. § 404.1567(b)], could they perform the past work?

(AR 83.) Mr. Cottle responded that the individual could do so. (*Id.*).

Based on Mr. Cottle's testimony, the ALJ determined that Plaintiff's current part-time employment is "highly accommodated in the nature of a sheltered workshop."[4] (AR 84.) Further, the ALJ found that Plaintiff's part-time employment "appears to be below presumptive substantial gainful activity levels." (AR 87.) The ALJ scheduled a further hearing to allow Dr. Goldstein to testify once he had the full evidentiary record.

### C. July 2017 ALJ Hearing

#### 1. Dr. Goldstein's Testimony

The ALJ held the second hearing on July 12, 2017. (AR 91.) Dr. Goldstein testified that he reviewed the full medical record and that it indicated that Plaintiff had "degenerative disc

---

[4] The Commissioner considers a claimant's earnings from "work activity as an employee (including earnings from work in a sheltered workshop or a comparable facility especially set up for severely impaired persons)" in determining whether the claimant "engaged in substantial gainful activity." 20 C.F.R. § 404.1574(b)(2). The ALJ noted at the hearing that Plaintiff's current earnings were "certainly . . . relevant," even though they appeared to be below substantial gainful activity. (*See* AR 87.)

9

disease in the spine." (AR 92-93.) In addition, Dr. Goldstein testified that Plaintiff had suffered a "previous heart attack" and a stroke. (*Id.*) Dr. Goldstein further noted that Plaintiff had hearing loss, was obese, had an injury at work in 2016 involving an injury to her shoulder, and was receiving injections in her right hip for osteoarthritis. (AR 93-94.)

Dr. Goldstein testified that Plaintiff has "recovered her strength" on her right side since her shoulder injury in 2016, and that she had "normal strength." (AR 95.) When asked about Plaintiff's injections for her hip pain, Dr. Goldstein stated that such degenerative arthritis is common in the neck, back, hips, and knees of individuals as they age. (AR 101.) Dr. Goldstein recommended "weight loss and cardiovascular exercise, especially if you have a problem with the hips" because "injecting and getting medications all the time for all this stuff usually makes matters worse." (*Id.*) Dr. Goldstein testified that while there is evidence in the medical record that Plaintiff has degenerative disease in her back, it appears "relatively mild." (AR 102.)

### 2. **Plaintiff's Testimony**

The ALJ allowed Plaintiff to supplement the record "in terms of the claimant's subjective complaints." (AR 103.) Plaintiff's then-counsel identified treatment records indicating that Plaintiff has edema in her legs. (AR 103 (referencing AR 1343, 1348).) As for Plaintiff's part-time employment, Plaintiff testified that she works part-time approximately 70 to 80 hours a month and that she limits the hours she works. (AR 107.) Plaintiff further testified that she suffers from tendinitis and carpal tunnel syndrome due to her work, has difficulty focusing and with her memory, and cannot sit for long periods. (AR 108-09.) The ALJ asked Plaintiff if she is "required to do a lot of keyboarding" at her current part-time job, and Plaintiff responded: "Basically, I don't do a lot of keyboarding. It's more or less click here, or click there for things, and filing, and different office work like copying or something like that." (AR 109.) Plaintiff further clarified that she works four to five hours per day during her shift, and that her employment is ongoing. (*See* AR 110 ("Basically, I'm trying to get better, and try to get something more . . . .").)

//

//

### 3.     **Vocational Expert's Testimony**

The ALJ next questioned Vocational Expert Lawrence Haney, referencing Mr. Cottle's testimony at the previous hearing and noting that "there were three jobs that came out as substantial gainful activity." (AR 111). First, Plaintiff was a medical record coder, which was a "skilled . . . sedentary job." (*Id.*) Next, Plaintiff worked as an abstractor coder, which was "semi-skilled" and sedentary. (*Id.*) Finally, the ALJ referenced Plaintiff's current part-time work with the Department of Rehabilitation as "semi-skilled" and "light." (AR 112.) The ALJ subsequently clarified that Plaintiff's current part-time work was "just under substantial gainful activity." (AR 116.)

Vocational Expert Lawrence Haney provided testimony that tracked Mr. Cottle's testimony at the February 2017 hearing. The ALJ posited the following hypothetical to Mr. Haney:

> I would like you to assume that we have an individual who is 63-years-of-age, and they have a high school education, and two years of college. Then they have the past relevant work as described. And, for the first hypothetical, I'm find that there is no mental impairment. And, from an exertional standpoint, the individual is limited as follows. They are able to lift and carry up to 10 pounds frequently. They would be 20 pounds [sic] occasionally. They would be able to sit, stand, and walk, and it would be . . . six of eight hours. And, for each one of them it would be up three hours each time. [T]hey could frequently reach overhead in all other directions. They could handle, finger, feel, and push, and pull in both upper extremities. And, they could frequently operate the controls, both right and left. This is bilaterally. They would never climb ladders or scaffolding. And, they could frequently climb stairs and ramps. The other postural activities like balancing, stooping, kneeling, crouching, and crawling, could all be done occasionally up to one third of the workday.

(AR 113-114.) The ALJ asked Mr. Haney if a person could perform any of the past three jobs held by Plaintiff with the hypothetical RFC proposed, and Mr. Haney answered that "all three positions would fit the hypothetical." (AR 115.)

### D.     **ALJ's Decision**

On August 31, 2017, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Social Security Act based on the

testimony, evidence, and the Social Security Administration's five-step sequential evaluation process for determining disability. (AR 20.)

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 1, 2014, the alleged onset date, through her date of last insured, which is June 30, 2019. (AR 25.)

At step two, the ALJ concluded that the objective medical evidence indicated that Plaintiff's "status post stroke (2005), status post myocardial infarction (2006), hearing loss, degenerative disc disease of the lumbar spine, and obesity" constitute severe impairments. (AR 26 (citing 20 C.F.R. 404.1520(c)).) The ALJ considered Plaintiff's evidence of mild right hip osteoarthritis "in combination with the claimant's other severe impairments, including obesity, in evaluating her functional limitations." (AR. 26.) The ALJ further determined that Plaintiff's obstructive sleep apnea was non-severe based on testimony from Dr. Goldstein "that there were no limitations related to her obstructive sleep apnea" and records which "indicated the condition has been described as 'mild.'" (*Id.*) Next, the ALJ determined that there was "insufficient evidence to establish the presence of a conversion disorder as a medically determinable impairment" because the "medical evidence does not elsewhere reference or confirm the presence of such disorder." (*Id.*) In addition, the ALJ found that plaintiff did not have vision loss as a result of her stroke because the "medical evidence fails to demonstrate corroborating complaints or findings." (*Id.*)

As to Plaintiff's claimed depression, the ALJ found that "the weight of the evidence does not demonstrate that it causes more than a minimal impact on [Plaintiff's] ability to perform basic mental work activities." (*Id.*) The ALJ agreed with Dr. Cohen's testimony that Plaintiff's "record demonstrates no more than a mild mood disorder that would respond to treatment within six months." (*Id.*) The ALJ noted that "Dr. Cohen is a board-certified psychiatrist specializing in psychotherapy and counseling, and [he] had the opportunity to review the entire evidentiary file." (AR 26-27.) Further, the ALJ noted that Dr. Cohen's testimony aligned with the longitudinal record and the medical opinions of consultative psychological examiner Dr. Fetterman "and the state agency consultants, all of whom found no more than mild impairment in areas of mental

12

functioning." (AR 27.) The ALJ concluded that because the mental impairment is only "mild," it constitutes a non-severe impairment. (*Id.*)

At the third step, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 27 (citing 20 CFR § 404.1520(d), 404.1525, 404.1526).) The ALJ based this conclusion on the testimony of both medical experts at the first hearing, Dr. Cohen and Dr. Goldstein, noting that both "are board-certified in their respective specialties." (*Id.*) The ALJ further noted that "[t]he record does not contain a conflicting opinion on this issue." (*Id.*)

Before reaching step four, the ALJ considered Plaintiff's RFC and determined that Plaintiff "has the residual functional capacity to perform light work" as defined under 20 C.F.R. § 404.1567(b) with the following exceptions:

> [Plaintiff] can sit, stand, or walk for 6 hours in an 8-hour workday, each for 3 hours at a time. She can frequently reach overhead and in all other directions. She has no restriction in handling, fingering, pushing, and pulling bilaterally. She can frequently use foot controls bilaterally. She can frequently climb ramps or stairs, but never ladders or scaffolds. She can occasionally balance, crouch, crawl, stoop, and kneel. She can work frequently at unprotected heights and around moving mechanical parts. She can frequently operate motor vehicles and have frequent exposure to humidity and wetness, dust, odors, fumes, cold, heat, and noise. She can have occasional exposure to vibrations.

(AR 27-28.)

In making his RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms; however, [Plaintiff's] statements considering the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 29.) The ALJ cited in support of his determination the objective medical evidence, Plaintiff's treatment history and subjective symptoms reported to treatment providers, and Plaintiff's "consistent [part-time] work activity." (AR 29-31.)

As for the medical opinion evidence, the ALJ afforded "great weight" to Dr. Goldstein's March 2017 interrogatory responses, noting that Dr. Goldstein's July 2017 hearing testimony

13

supported those responses and "provided an in-depth and well-supported evaluation of the record." (AR 31.) The ALJ also noted that "Dr. Goldstein's assessment is internally consistent with that of consultative neurological examiner Dr. Rana, who found [Plaintiff] capable of a wide range of light work, with no manipulative limitations, and some postural limitations due to lower back pain." (*Id.*) The ALJ afforded "significant weight" to Dr. Rana's opinion, finding it supported by her objective findings upon examination. (*Id.*) Likewise, the ALJ afforded "significant weight to the state agency consultants, who similarly found [Plaintiff] capable of a wide range of light work." (*Id.*) The ALJ afforded "limited weight" to the January 2015 medical source statement of Dr. Bernardo and his September 2015 letter, finding that Dr. Bernardo's "assessment is not corroborated by his accompanying treatment records or in the longitudinal record as a whole." (*Id.*) The ALJ also assigned "limited weight" to Dr. Bernardo's statements regarding Plaintiff's mental condition, noting that "the record does not evidence that [Dr. Bernardo] has provided any significant treatment for mental health symptoms." (*Id.*) In sum, the ALJ determined "after careful consideration of the entire evidentiary file and the hearing testimony," that Plaintiff's RFC assessment "is supported by the weight of the evidence." (AR 32.)

At step four, the ALJ cited the vocational experts' hearing testimony and concluded that Plaintiff "is capable of performing past relevant work as a medical record[ ] coder and abstract coder" because such work "does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." (*Id.* (citing 20 C.F.R. 404.1565).) The ALJ thus determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 1, 2014 through the date of this decision." (*Id.* (citing 20 CFR § 404.1520(f)).) Accordingly, the ALJ did not reach step five.

**DISCUSSION**

Plaintiff argues that the ALJ's decision contains reversible legal error because the ALJ failed to: (1) consider the entire record in determining Plaintiff's RFC at step four; and (2) provide "legally sufficient reasons" for rejecting Plaintiff's subjective symptom testimony regarding "her restrictive RFC." (Dkt. No. 21 at 7-12.) The Court addresses each argument in turn and concludes that the ALJ's decision is supported by substantial evidence and free of legal error.

14

**I.     RFC Determination**

Plaintiff's argument regarding the ALJ's RFC determination appears primarily intertwined with her argument regarding the ALJ's assessment of her subjective symptom testimony. (*See generally* Dkt. No. 21 at 7-12.) However, Plaintiff also argues that in determining Plaintiff's RFC the ALJ failed to mention the following "known and disclosed impairments" reflected in the treatment records: (1) "Abdominal, groin, leg, and foot pain with limited mobility"; (2) "Dizziness"; (3) "Shortness of Breath"; (4) "ADHD"; (5) "Osteoarthritis Right Hip"; (6) "Asthma"; (7) "Hypertension"; (8) "Hand Tendonitis"; (9) "Anxieties/Adjustment Disorder"; and (10) "Anemia." (Dkt. No. 21 at 8 (citing AR 46, 133-34, 1089, 1237-38, 1255, 1287, 1327, 1369, 1389).)

To the extent Plaintiff's argument suggests that the ALJ was required to discuss every medical condition noted in Plaintiff's treatment records regardless of severity, Plaintiff cites no authority for that proposition. Indeed, the ALJ was not required to do so. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (noting that an ALJ "need not discuss *all* evidence," but must instead "explain why significant probative evidence has been rejected") (internal quotation marks and citation omitted). Further, with the exception of "asthma," the ALJ's decision *does* address the impairments listed above and cites to the medical record in support of his assessment of same. (*See* AR 26-27 (discussing Plaintiff's medically determinable mental impairment and concluding that it is non-severe because it "causes no more than 'mild' limitation in any of the functional areas"); 29 (discussing Plaintiff's testimony regarding "history of tendonitis"); *id.* (discussing Plaintiff's claimed neurological symptoms stemming from her stroke in 2005 and treatment records and examination findings regarding Plaintiff's motor and neurological functioning); 30 (discussing Plaintiff's testimony regarding hypertension and edema and citing treatment records demonstrating "no signs of edema upon physical examination" and "well-controlled hypertension"); *id.* (discussing Plaintiff's treatment and monitoring for "residual anemia" resulting from her treatment for a "retroperitoneal hematoma in October 2014," and noting that Plaintiff's anemia "improved shortly thereafter"); *id.* (discussing Plaintiff's "treatment for lower extremity musculoskeletal impairments"); 30-31 (discussing Plaintiff's testimony

1 regarding "shortness of breath" and citing treatment records where Plaintiff denied such symptoms and examinations "routinely evidenc[ing] normal respiratory and cardiac signs and symptoms").

Simply put, there is nothing to suggest that the ALJ committed legal error and did not, as he states in his decision, consider the entire record and assess Plaintiff's RFC "based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all [Plaintiff's] medically determinable impairments." (*See* AR 27-28.) The ALJ's RFC determination is also supported by substantial evidence of record. The opinions of Dr. Rana and the non-examining state agency physicians track the ALJ's RFC determination, as does Dr. Goldstein's March 2017 interrogatory. (*See* AR 128-29, 143-45, 681, 1424-30.) The medical expert testimony from Dr. Cohen and Dr. Goldstein also supports the ALJ's RFC determination, and their testimony is based on and cites to the medical record. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

## II. Subjective Symptom Testimony

### A. Legal Standard

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citation omitted).

"The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 924 (9th Cir. 2002). Thus, the ALJ cannot rely on "general findings" in rejecting a plaintiff's subjective symptom testimony. *Holohan v.*

*Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). That said, the ALJ need not accept the plaintiff's allegations of pain as true, and "may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1112 (internal quotation marks and citations omitted). Further, "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *See id.* "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.*

If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

**B. ALJ's Analysis**

Applying the two-step analysis, the ALJ first determined that Plaintiff's ""medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms." (AR 29.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036. Here, the ALJ found no evidence of malingering and instead cited specific inconsistencies between Plaintiff's statements regarding the "intensity, persistence and limiting effects" of her impairments and both the medical evidence and Plaintiff's current part-time work.

First, the ALJ provided specific examples with citations to Plaintiff's medical record. With regard to Plaintiff's alleged upper extremity impairments, the ALJ noted that "[t]he claimant testified that she is unable to use a computer keyboard for more than 5 minutes at a time due to a history of tendonitis, but the record does not document tendonitis or a degenerative impairment of either hand." (AR 29.) The ALJ further noted an August 2016 treatment record indicating that Plaintiff was "currently working without restrictions." (*Id.* (citing AR 1249).) The ALJ also cited multiple treatment records demonstrating normal objective findings upon examination with regard to motor skills, strength, and neurological functioning that conflicted with the severity of

17

Plaintiff's subjective symptom testimony. (*See id.*) The ALJ cited similar, specific inconsistencies regarding Plaintiff's alleged post 2005 stroke symptoms, heart condition, lower extremity edema, "lower extremity musculoskeletal impairments, including lumbar degenerative disc disease," and treatment records for same. (*See id.* at 29-31.)

The ALJ further determined that Plaintiff's current part-time work was inconsistent with Plaintiff's testimony. The ALJ found, in pertinent part:

> [A]lthough the claimant's work for the Department of Rehabilitation as an aide to a disabled counselor is performed just slightly below the presumptive levels for substantial gainful activity, the claimant is limiting the number of hours she is working. She testified that she could work more if she wanted to do so, but she would have to coordinate with her disabled counselor. ***All she has to do to meet the presumptive level for [substantial gainful activity] would be to work an[ ] additional 3.5 hours per week, i.e., an additional 42 minutes per day. This consistent work activity, which is very close to substantial gainful activity levels for more than a year and a half, is inconsistent with the alleged severity of her symptoms and limitations.*** Her treatment records also indicate that she had been actively looking for a job prior to receiving the position she currently performs.

(AR 31 (emphasis added).) The ALJ's findings regarding Plaintiff's ability to work in some capacity and her efforts in seeking employment constitute specific, clear and convincing reasons for discrediting her subjective symptom testimony. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (discounting the plaintiff's subjective claim of debilitating disability in part because the plaintiff "recently worked as a personal caregiver for two years, and has sought out other employment since then"). Further, the ALJ's consideration of Plaintiff's current, sustained part-time work was proper under the Commissioner's regulations even though such work did not constitute substantial gainful activity. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did. We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful activity.").

In sum, the ALJ provided specific, clear and convincing reasons for discrediting Plaintiff's subjective symptom testimony and his assessment is supported by substantial evidence. Accordingly, the ALJ's decision must stand. *See Burch,* 400 F.3d at 679 ("A decision to deny

benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error.") (internal quotation marks and citation omitted).

**CONCLUSION**

For the reasons stated above, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion.

This Order disposes of Docket Nos. 21 and 22.

**IT IS SO ORDERED.**

Dated: December 27, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL JEAN RUTLEDGE,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 18-cv-06601-JSC<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 27, 2019, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Darryl Jean Rutledge
P.O. Box 454
Hayward, CA 94543


Dated: December 27, 2019

                                         Susan Y. Soong
                                         Clerk, United States District Court

                                       By:_____
                                       Ada Means, Deputy Clerk to the
                                       Honorable JACQUELINE SCOTT CORLEY